1              IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF PENNSYLVANIA
2

3    COREY L. HARRIS,            :
               Plaintiff        :
4                               :
               v.               :   Civil Action No. 04-369 Erie
5                               :
     DOMESTIC RELATIONS          :
6    SECTION, et al.,           :
               Defendants       :
7

8

9

10            Status conference held in the above-captioned

11       matter, on Thursday, April 6, 2006, commencing at

12       2:12 p.m., before Chief U.S. Magistrate Judge Susan

13       Paradise Baxter, U.S. Federal Courthouse, 17 South

14       Park Row, Erie, PA 16501.

15

16   For Defendants Causgrove and Nelson:

17       Matthew J. McLaughlin, Esq.
         Ridge & McLaughlin
18       246 West Tenth Street
         Erie, PA 16501
19

20   Pro Se:

21       Corey L. Harris
         Robin Tate
22       Vivian Tate

23

24            Reported by Carol A. Holdnack, RPR
              Ferguson & Holdnack Reporting, Inc.
25

1           THE COURT:  We're on the record for any conference

2    we have, and we're just here to try to get this case moving

3    since it's already a year plus old.  All right.  So I'm

4    going to call the case.

5           This is Corey L. Harris versus Domestic Relations

6    Section, et al, Civil Action No. 04-369 Erie.  Representing

7    Defendants Causgrove and Nelson is Matthew McLaughlin,

8    Esquire.  Vivian Tate and Robin Tate appear pro se.  Corey

9    L. Harris, Plaintiff, appears pro se.

10          All right.  We finally got everyone served, and

11   that was no easy task, Mr. Harris.  But we got them all

12   served.  So that's what we're doing here today.  We have an

13   Answer from all of the Defendants.  Did you see the answers

14   from -- pro se answers from Ms. Tate, Ms. Nelson?  Who am I

15   missing here?

16          MS. SANDER:  Causgrove may not have answered.

17          THE COURT:  Causgrove may not have answered, no.

18   But you just came in on that.

19          MR. McLAUGHLIN:  I got an assignment from Wally

20   Knox, I think, midweek, and I came in on it on Monday.  I

21   think I entered my appearance for Causgrove on Monday, and

22   Nelson yesterday or the day before.

23          THE COURT:  All right.  So we'll expect a

24   response -- an Answer or other filing.  All right.

25          I'm going to start, Mr. Harris, with you because I

1    have your Complaint here, which I've read.  And I am not

2    quite sure what the Federal basis for your case is.

3              In this world, in our American judiciary world --

4    judicial world, any Complaint you have in the civil realm

5    can be brought in State Court, but not any one can be

6    brought in Federal Court.  We only hear certain types of

7    cases.  So we have to decide whether or not it fits here.

8              So why don't you tell me, in shorter order than

9    all of these pages, exactly what your complaint is against

10   these people.

11             MR. HARRIS:  Okay.  The reason why I brung my

12   complaint to the US District Court based on the federal

13   statute on the tax -- under the tax laws.

14             THE COURT:  Okay.  Under tax laws.

15             MR. HARRIS:  Under tax laws, correct.  And the

16   matter came in where I felt like this class action suit,

17   that Mrs. Tate was being represented by the Domestic

18   Relations, was being violated by state and federal laws.

19             THE COURT:  What exactly happened that they --

20   first of all, you cannot take the children as deductions now

21   under the tax.  Is that --

22             MR. HARRIS:  No, it's not about --

23             THE COURT:  That's not that.  Okay.

24             MR. HARRIS:  -- deductions.  Okay.  That will come

25   in --

```
 1              THE COURT:  There is a -- I did read about the
 2    lien.
 3              MR. HARRIS:  Right.  Various allegements.
 4              THE COURT:  Okay.
 5              MR. HARRIS:  And things of that nature.  Okay.
 6    But my complaint was that, originally, what brung this
 7    matter to hand was that when I set up for a modification
 8    hearing with Domestic Relations --
 9              THE COURT:  Okay.
10              MR. HARRIS:  -- it was set up with Denise Nelson,
11    who was a very close family friend of the Tates.  Okay.  And
12    I had addressed to her that I was in the process of
13    implementing a business.
14              THE COURT:  And she works at Domestic Relations;
15    is that right?
16              MR. HARRIS:  Right.  Yes, that is correct.  Okay.
17    And we met.  And I indicated to her that I was in the
18    process of implementing a business plan that was from 2000,
19    that I'm currently in the process of trying to get back on
20    the road after four years.  So she indicated, can you bring
21    me verification of this.  And I brung her verification of
22    the business development, which I have all the information
23    here with the letter from Gannon.  And I indicated to her
24    that also I was seeing other avenues in my financial growth.
25              THE COURT:  To try to --
```

1          MR. HARRIS:  To try to set a legacy for my

2    children.

3          THE COURT:  Now, is Ms. Nelson interested in

4    support payments?  Is that her business at the Domestic

5    Relations?

6          MR. HARRIS:  She has authority there over

7    individuals who does the modifications and conference --

8          THE COURT:  Okay.  All right.

9          MR. HARRIS:  -- and things of that nature.  She is

10   like a supervisory position.

11         THE COURT:  But are we talking about custody

12   issues here or support issues?

13         MR. HARRIS:  Well, it was custody-based -- it was

14   support-based on custodies.

15         THE COURT:  Okay.

16         MR. HARRIS:  Both merits.  Because of the fact

17   that Judge DiSantis in 2000 gave me $1,600 back.  Okay.

18   Because I showed -- we had a hearing, me and Ms. Tate.  And

19   he found that, based on my -- my lease here at Georgetown

20   Drive, which I have here, if I can submit this.

21         THE COURT:  Well, I'll take a look at it, yes.

22         MR. HARRIS:  Okay.

23         THE COURT:  We don't have to worry about evidence

24   right now.

25         MR. HARRIS:  Okay.  Here.  Would verify that I had

1  my three oldest children in my custody at that time.  Okay.

2  So --

3            THE COURT:  Did you have this on the Complaint?

4            MR. HARRIS:  No.  I was -- like I said, I was

5  incarcerated and was not able to retrieve some of these

6  documents.

7            THE COURT:  All right.

8            MR. HARRIS:  So I was unable to submit it.

9            THE COURT:  Then I won't look at it yet.

10            MR. HARRIS:  Okay.  So money was given and

11  children was analyzed based under my jurisdiction, okay, by

12  Common Pleas Court.  Now, Ms. Tate had two children by a

13  relative of mine, which is my sister's baby's dad's

14  boyfriend.  She had two -- she conceived two twins by my

15  cousin.  And Ms. Tate had conceived the children, and she

16  needed assistance for those two children.  Because I always

17  been supporting cash for my children.  So the system --

18            THE COURT:  But you had not adopted those

19  children.

20            MR. HARRIS:  No.  But I raised them for four

21  years.  And I still, you know, try to be as much in their

22  life now.  But what I'm saying, is that the system added all

23  my five childrens on to her niece, to the two twins that she

24  had, which prevented her to take time off work to raise

25  them.

```
1              And I had a dispute with Domestic Relations on,

2     you know, I'm playing my part.  You know, I don't -- we

3     don't need the system for anything, okay.  Because of the

4     fact that, you know, we both are doing this.  And she was

5     still getting assistance for the two twins.  But they added

6     everything to the order.  So I filed a modification and

7     things of that nature and --

8              THE COURT:  And it did work.

9              MR. HARRIS:  The modification did get me in front

10    of the conference individuals at the Common Pleas Court, but

11    it didn't -- they failed to resolve the matter at hand

12    because of the fact that Ms. Tate -- they submitted all my

13    kids to the record.  And I'm like -- the Judge already found

14    this matter resolved, and how can you override the Judge by

15    putting these kids back on Ms. Tate's order.  So then they

16    enforced my order to exceed $469 a month to $828 a month,

17    when I had no source of income and I was on state -- state

18    unemployment.  Okay.

19             So I'm alleging that this modification isn't a

20    fair income verification based on receiving food stamps from

21    county assistance of $144 a month.  Plus, I'm receiving -- I

22    was only living off $122 every two weeks because of Domestic

23    Relations taking 270 every two weeks from my unemployment,

24    leaving me with $122.  And I have an eviction notice here

25    from the time frame where I was unable to make ends meet and
```

 1    bills and things of that nature.  They put me in for natural

 2    hardship.

 3          Which, then, I received a documentation and a

 4    letter of verification from my employer, which is Medical

 5    Staffing Network, that I submitted to Denise Nelson and the

 6    conference office.  Which verifies here that -- this letter

 7    is to whom it may concern.  Corey Harris has been employed

 8    with Medical Staffing Network from 5/30/03 to 9/2/03 and

 9    6/04 to present.  We are a staffing agency.  Employees are

10    scheduled on an as-need base.  All employees are hired as

11    per diem -- per diem.  If I may be of further assistance to

12    you, feel free to call me at 866-3458, area code 814.  Karen

13    Wyler (phonetic), Human Resources.

14          And they had all this information.  And, also, I

15    was going through a disability verification because of the

16    fact that the way I wanted to do -- advance in my business

17    growth for the -- to put a legacy I wanted to leave, was

18    that I had to impair myself to another level in my reading

19    and writing and my spelling.  Which I had a dyslexia for

20    over 20 years and I have been self-learning that.

21          THE COURT:  All right.  So right now you're

22    complaining about the fact that they increased -- for all

23    these reasons.  They increased your support payment even

24    though you were in dire straits.

25          MR. HARRIS:  Dire straits and verification of

1    medical conditions.

2              THE COURT:  And all that was given to them.

3              MR. HARRIS:  From the Social Security office, yes.

4              THE COURT:  Now, what complaint do you have

5    against these two women?

6              MR. HARRIS:  Well, I feel that they supported the

7    depravation, and they provided false information to these

8    individuals based on their own income enhancement and things

9    of that nature for, you know, for --

10             THE COURT:  To get a higher amount from you

11   monthly.

12             MR. HARRIS:  Right.  And it is based on greed.

13   Based on the OIC program, which would allow these

14   individuals to indicate that they are providing service for

15   these children as being a caregiver and watching the

16   children, when I have been with my children and was living

17   with Ms. Tate when all this was going on.

18             And she was also indicating to other individuals

19   that was watching the children, and she was submitting

20   documents to OIC, who would then forward a monthly check

21   allowance to whoever she had was raising the children when I

22   was within -- with her within the household.  Not knowing

23   this, until one day I used the van and put down the sun

24   visor, and everything fell in my lap from the documentation

25   that she indicated that the children was being raised by

1    Mr. Tate.

2              THE COURT:  So you're accusing her of some sort of

3    fraud.

4              MR. HARRIS:  Exactly.  And I am alleging that they

5    didn't provide truthful -- they solicited information, false

6    information, to the courts for their own best interest.  And

7    that's what the -- my allegement is revolving at.  It goes

8    from A to Z.  And that's what --

9              THE COURT:  Well, I'll continue to interrupt; I

10   just do that.  But, anyway, first of all, so you are

11   complaining about the way the State came up with this

12   amount.  So that's a State claim.  You're complaining about

13   the fact that they have somehow defrauded the State in order

14   to get some money for babysitting, as well as to get a

15   higher amount from you when you were, in fact, living in the

16   home.  How, again, does that have to -- does that involve

17   the tax laws?

18             MR. HARRIS:  Because of the fact that Ms. Tate has

19   intentionally made her income within her guidelines so she

20   can receive compensation in different areas because --

21   support it through claiming the kids and other --

22             THE COURT:  Is that under the federal law or the

23   state tax?

24             MR. HARRIS:  Oh, under both actually.  Because of

25   the fact that she makes herself eligible for various

1  programs.  Like House of Humanity, where I'm alleging that

2  she had defamation of my character based on a report that

3  was in United Way when she indicated that she was in an

4  abusive relationship with me for over a number of years and

5  things of that nature.

6          And that program only allows you to be eligible if

7  you can make the allegement that you are in an abusive

8  relationship and things of that nature.  So I'm alleging

9  that it was defamation of character to make herself eligible

10  for these various programs.

11          THE COURT:  All right.  I think I see where you're

12  going.  Mr. McLaughlin, I'll have you start first.  What do

13  you foresee your next move to be?

14          MR. McLAUGHLIN:  Probably a Motion to Dismiss on

15  behalf of Mr. Causgrove who -- there's no responsive

16  pleading filed yet.  I believe Ms. Nelson filed an Answer.

17          THE COURT:  And what's Mr. Causgrove's position?

18          MR. McLAUGHLIN:  He is -- I haven't had my meeting

19  with him yet.  I talked to him on the phone.  He's in

20  Domestic Relations.  He currently is -- I believe Denise

21  Nelson is no longer an employee.  So I will -- I need to

22  find out.

23          THE COURT:  You think he is her successor.

24          MR. McLAUGHLIN:  He's a supervisor/successor.

25          THE COURT:  All right.

1           MR. McLAUGHLIN:  It would be file a Motion to

2    Dismiss on behalf of Mr. Causgrove.  Ms. Nelson has filed an

3    Answer pro se.  And I'm not sure what the mechanism would

4    be.

5           THE COURT:  Judgment on the pleadings.

6           MR. McLAUGHLIN:  Yeah.  I'll get the judgment on

7    the pleadings for her.  Basically, from what I glean from

8    Mr. Harris, he's alleging some type of fraud on the federal

9    government and on the state government, that she is

10   attempting to get money she is not entitled to.  I don't

11   know that he would have standing to do that.

12          Secondly, I haven't heard anything that would

13   indicate that any constitutional, federal constitutional

14   right has been violated.  So, basically, he's contesting the

15   second prong of his case.  I guess is contesting his support

16   being increased despite the fact that he's submitted

17   documents indicating that maybe that it should not be.

18          THE COURT:  Well, how about if I put you on a

19   tight schedule on that?  Do you think you could do this by

20   the end of April?

21          MR. McLAUGHLIN:  Sure.

22          THE COURT:  By the end of April, you'll be

23   receiving, as well as the Court will be, Mr. Harris, you'll

24   be receiving -- it appears, from what he's saying now,

25   Motions to Dismiss the Complaints against his clients.  And

1   you will have an opportunity then -- I will give you -- ten

2   days to two weeks is the typical time, to oppose that.

3           You write your brief and will send that in to us.

4   And then I will decide that motion.

5           MR. McLAUGHLIN:  Your Honor, that's by April --

6           THE COURT:  28th.

7           MR. McLAUGHLIN:  28th.

8           THE COURT:  It would be 28th, I guess.  Yes, May

9   1st is a Monday.  I guess we could give him to May 1st, if

10  you need that weekend.

11          MR. McLAUGHLIN:  I think we can.  It will be

12  rather short.

13          THE COURT:  Now, who wants to talk first?  Robin.

14  You're Robin?  Mrs. Tate, what's your -- you've responded by

15  way of Answer.

16          MS. ROBIN TATE:  Yes.

17          THE COURT:  You can do any number of things.  I

18  can't give you legal advice.  Were you planning on getting

19  counsel to help you defend this case?

20          MS. ROBIN TATE:  I have no money.  I am on

21  Welfare.

22          THE COURT:  Okay.  Have you tried Northwest Legal

23  Services?  Do you have her response?

24          MS. SANDER:  No.  It's electronic.

25          THE COURT:  Was that the one done in the letter

1    form?

2              MS. SANDER:  I think both of theirs may have been.

3    They were one page.

4              THE COURT:  And how about you?

5              MS. VIVIAN TATE:  I tried to get counsel for

6    today, and it was too late of a notice.  But I do have the

7    makings of a lawyer, and I would definitely be represented

8    by counsel.

9              THE COURT:  Okay.  Well, once you are, please

10   explain to them that Mr. McLaughlin -- Attorney McLaughlin

11   is going to be filing something by the end of April.  They

12   may want to get on board with that.  They also -- whoever it

13   is has to file a notice that they are going to be

14   representing you with the Court.  And so, therefore, they'll

15   get all the filings.  They need to get all the filings then

16   from there on.

17             Because this is not a criminal case, I can't

18   appoint an attorney to represent you.  And sometimes

19   Defendants who are unable to hire attorneys to help them

20   sort of come together with some attorneys of other

21   Defendants for the common good.  But it will just depend.

22   They may or may not wish to help you in that way.  All

23   right.

24             But you've done everything that's required of you

25   up to this point by answering the Complaint.  But there will

1    be things that you'll be required to do beyond that.

2            I'm not going to set a discovery schedule until I

3    take a look at your filing.  Jurisdiction, however, is sua

4    sponte, so I can do that on my own.  Anybody have any

5    questions?

6            MS. ROBIN TATE:  Were we under some sort of oath

7    today?

8            THE COURT:  No.  Nothing here has been sworn to.

9    So if you believe he was telling me an untruth, that's fine,

10   and you can always say that at some other point in the case.

11   I was just asking him, not under oath, but on the record,

12   but not under oath, to explain to me what the case is about,

13   because I'm not able to glean that from the record.

14           Also, in proceedings like this, typically

15   attorneys are here speaking for the clients and the clients

16   aren't here.  So, therefore, the attorneys are speaking for

17   them, and what they say is not testimony either.  It's not

18   under oath.  If ever that is the case, I will tell you

19   beforehand and you will take an oath.

20           You had another question?

21           MR. HARRIS:  Yes.  I didn't get a chance to -- I

22   have yet to speak about Mr. Causgrove.  I did meet with him

23   before all this happened about the -- my concerns.  And he

24   just indicated that, you know, I have to do what I have to

25   do.  Now, I tried to resolve this matter before it even got

1    to this -- escalated to this far.  And I'm allege -- I had

2    alleged on him that they used their position, you know, to

3    violate my equal protection, you know, 14th Amendment and

4    things of that nature.

5            THE COURT:  Is that in here?

6            MR. HARRIS:  I believe I alleged that on the

7    amendment.  Complaints and things of that nature, when I had

8    filed various amendments.

9            THE COURT:  Because I hadn't seen anything that

10   brought up constitutional issues.  So that's why I was

11   surprised, candidly, and I wondered what --

12           MR. HARRIS:  I believe I made that in the

13   Amendment Complaint.

14           THE COURT:  Where is your Amended Complaint?

15           MR. HARRIS:  That there was sent to the Court from

16   the Erie County Prison in-house mail system.  And I have

17   various rough drafts of that Complaint.

18           THE COURT:  We're looking, and we don't recall an

19   Amended Complaint.  Well, there was one, because that's when

20   all that stuff -- isn't when all that stuff about service?

21           MR. HARRIS:  Right.  It's like a 26-page

22   allegement.

23           MS. SANDER:  That was against Domitrovich.

24           THE COURT:  Oh.

25           MS. SANDER:  It has, inside of the objections,

1    another one against Domitrovich.

2              THE COURT:  That was against Domitrovich and who

3    else?

4              MS. SANDER:  Domestic Relations section was its

5    own Defendant.

6              THE COURT:  And those were dismissed, those

7    parties.

8              MS. SANDER:  Right.  Um-hum.

9              MR. HARRIS:  Yeah, because I had brought to the

10   attention of the Court that they had my income roughly

11   around almost 43,000 a year, when I had evidence here that I

12   only made 11,000.  So I was trying to say what constituted

13   my 18-month incarceration based on the false income

14   verification which violates my 4th Amendment rights,

15   unreasonable seizure of property.  That's where all this

16   individuals come in at, based on my allegement resulting

17   from my confinement for 18 months.

18             THE COURT:  Well, that's all well and good now,

19   but I don't see any of that in here.  And we don't have an

20   Amended Complaint that says that.

21             MS. SANDER:  That may be in another case.

22             THE COURT:  You think?  Mr.  McLaughlin, have you

23   read the whole thing?

24             MR. McLAUGHLIN:  I have not read an Amended

25   Complaint, I do not believe.

1          THE COURT:  Do you remember anything in here that

2    I'm forgetting?

3          MR. McLAUGHLIN:  No.  I didn't see in any of the

4    pleadings --

5          THE COURT:  That's why I was so confused.

6          MR. McLAUGHLIN:  -- that there was any allegation

7    of a constitutional violation.

8          THE COURT:  Typically, someone goes under the

9    civil rights laws, but I don't see that.  There are about

10   five of these Complaint title pages for each of the

11   Defendants.

12         MR. McLAUGHLIN:  I think I represented someone

13   in -- Mr. Harris had another case that was dismissed.  I

14   don't know if that --

15         THE COURT:  Well, it is notice pleading.  I mean,

16   if I could have gleaned that from here, I am required to do

17   so.  Well, that's neither here nor there.  You'll find that

18   after your -- when I require response to any motions to

19   dismiss, Mr. Harris, you can attempt to file a -- you can

20   file, for your benefit a Motion to Amend the Complaint that

21   will correct those problems, if it's possible.  And we'll

22   take a look at that.  I still don't see it.  So we'll take a

23   look at that.  That's all right.  Yes?

24         MS. ROBIN TATE:  I have a few questions.  This

25   attorney said that he's going to file a Motion to Strike.

1          THE COURT:  Motion to Dismiss the case.

2          MS. ROBIN TATE:  Motion to Dismiss the case.  Can

3    my mother and myself also do the same thing?

4          THE COURT:  Well, you have already filed an

5    Answer.  Motion to dismiss is in lieu of an Answer.  But, as

6    he pointed out, one of his clients has also filed an Answer.

7    You can file what's called a Motion or Judgment on the

8    Pleading, which is the same idea, and say that you want the

9    case dismissed against you and give your reasons.

10          MS. ROBIN TATE:  Okay.  And then as a

11    Plaintiff/Defendant situation --

12          THE COURT:  And, Attorney McLaughlin, sometimes a

13    little discussion with them is helpful.

14          MR. McLAUGHLIN:  Sure.

15          MS. ROBIN TATE:  With this Plaintiff/Defendant

16    situation, should he be calling me, my house and my cell

17    phone, and things like that?

18          THE COURT:  Well, I don't know what to tell you.

19    Do you guys have a custody agreement and those sorts of

20    things?

21          MS. ROBIN TATE:  No.  He's never tried to get

22    custody of my kids.

23          THE COURT:  All right.  So, you don't have any

24    agreements.  You don't have any --

25          MS. ROBIN TATE:  No.  He's free to take them if he

1    wants them.

2              MS. SANDER:  Do you have a PFA?

3              MS. ROBIN TATE:  Not now.  He just got out of

4    jail.

5              MR. HARRIS:  Excuse me, Your Honor, if I may

6    speak.  There's no physical threat of harm or anything.  I

7    have one resource to get in touch with my children.  She has

8    one number I have access to, and that's her cell phone.  I

9    call for the children on the cell phone to speak to the

10   children.  She has said don't call my house.  Okay.  And

11   that's the only communication factor I have.  I am trying to

12   get myself financially stable so I can get custody of my

13   children.

14             THE COURT:  All right.  I understand.  All right.

15   Let me answer her question.  You can be quiet now.

16             The answer is that we have no reason to tell him

17   or to order him not to talk to you.  If you were represented

18   by an attorney and your attorney said, I don't want you to

19   talk directly to her, I want you to talk to me, then that's

20   a different situation than the one you have.  All right.

21   You can tell him you don't want to talk to him.

22             MS. ROBIN TATE:  But as him, as he's his own

23   attorney, or whatever he is --

24             THE COURT:  I know.

25             MS. ROBIN TATE:  -- should he be asking to sleep

```
 1   with me and to marry me?
 2              THE COURT:  Well, he can do what -- you know, I
 3   can't -- I mean, I would --
 4              MR. HARRIS:  You're already married.
 5              THE COURT:  I would have already a response for
 6   that myself, but I have none as a member of the Court.  Any
 7   other questions?
 8              MS. VIVIAN TATE:  Can I have a conference?  Can I
 9   say something, too, Judge?
10              THE COURT:  Sure.
11              MS. VIVIAN TATE:  Okay.  Now, I'm missing work.
12   And who pays for this?  Who pays for all this?
13              THE COURT:  When you are sued, you are put in an
14   untenable position.  I mean, people who are civilly sued are
15   not only hurt financially, they're inconvenienced.  And that
16   is if they're not guilty of anything or not liable for
17   anything, is actually the word.  But there's no one who can
18   pay you for this meeting, because you are being called here
19   as a Defendant.  If you win a case, you can always apply to
20   the Court for expenses incurred, or attorney's fees.
21              MS. VIVIAN TATE:  Okay.
22              THE COURT:  All right.  Anything else?  So we have
23   a deadline of April 30th, and you will respond to that.
24   I'll send you out an order that you'll have a response date.
25   It's typically 10 to 14 days.  You both, if either of you,
```

1    or attorneys or whatever wish to file similar pleadings,

2    similar Motions to Dismiss the case, or Motions for Judgment

3    on the Pleadings, I would like you to do that by the end of

4    April as well.

5            MS. VIVIAN TATE:  In doing so, our plate is clean?

6            THE COURT:  If the motion is granted and the case

7    is dismissed against you, then it's over.

8            MR. McLAUGHLIN:  Your Honor, there is no Amended

9    Complaint that I'm -- just to make it clear, that I'm --

10           THE COURT:  Yes.  He tried to file one, but it was

11   only as to Judge Domitrovich and the Domestic Relations.  It

12   came with his objections.  And so that was -- the motion was

13   denied.

14           MS. SANDER:  Do you want to give them an extra

15   time period in here, an extra week?

16           THE COURT:  For the two women?  I'm going to leave

17   it at April 28th.  If you have a difficulty meeting that

18   time period, all you have to do is contact the Court, and we

19   can extend the time.  All right?

20           I'm just trying to get this moving, because it's

21   already old.  It took a long time to get everyone served.

22   We had lots of problems.

23           All right we're adjourned.  Thank you all very

24   much.

25           (Hearing adjourned at 2:41 p.m.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25